Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Benjamin H. Richman (Admitted *Pro Hac Vice*)
brichman@edelson.com
Christopher L. Dore (Admitted *Pro Hac Vice*)
cdore@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Mark Eisen (SBN – 289009)
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 90013
Tel: 213.533.4100
Fax: 213.947.4251

*Attorneys for Plaintiff Kimberly Yordy and the putative class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| KIMBERLY YORDY, individually and on behalf of all others similarly situated,<br><br>       *Plaintiff,*<br><br>    *v.*<br><br>PLIMUS, INC., a California corporation,<br><br>      *Defendant.* | Case No. 12-cv-00229-TEH<br><br>**PLAINTIFF'S NOTICE OF MOTION AND RENEWED MOTION FOR CLASS CERTIFICATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:   March 3, 2014<br>Time:  10:00 a.m.<br>Judge: Honorable Thelton E. Henderson |

**PLEASE TAKE NOTICE** that on March 3, 2014 at 10:00 a.m., or as soon thereafter as counsel may be heard, in the United States District Court for the Northern District of California, Courtroom 12, 19th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff Kimberly Yordy will and hereby does move this Court pursuant to Federal Rule of Civil Procedure 23 to certify a class in this matter.

The basis for Plaintiff's Renewed Motion for Class Certification is that all of the standards for class certification set forth in Fed. R. Civ. P. 23(a) and (b) have been satisfied. The requirement of numerosity has been met because Plaintiff has alleged and demonstrated a Class consisting of thousands of consumers. The requirement of commonality is satisfied because relief turns on questions of law and fact common to the Class, including whether Defendant facilitated and promoted the sale of deceptive products to Plaintiff and the Class, whether Defendant knew that the products it was promoting and selling were fraudulent, and whether Plaintiff and the Class members suffered common injury. The third prerequisite for class certification, typicality, has been fulfilled because Plaintiff's interests are aligned with the interests of the Class, and Plaintiff's claims are typical of the claims of the putative Class members. Plaintiff and her counsel, Edelson PC, will and have also fairly and adequately protect the interests of the Class, as Plaintiff's counsel has extensive experience litigating similar consumer class action lawsuits involving the promotion and sale of digital media. Finally, the questions of law and fact that are common to the Class predominate over any questions that may affect Class members on an individual basis, and the class action mechanism is superior to any other available method to reach a fair and efficient adjudication of the controversy at issue.

Plaintiff's Motion is based on this Notice of Motion and Renewed Motion for Class Certification, a Memorandum of Points and Authorities set forth below, the pleadings and other papers on file in this matter and all documents in the record, discovery produced to date, and upon evidence or argument that may be presented at or before the hearing on this Motion.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,

**KIMBERLY YORDY**, individually and on behalf of
a class of similarly situated individuals

Dated:  February 5, 2014

By:  /s/ Benjamin H. Richman
       One of Plaintiff's Attorneys

Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Benjamin H. Richman (Admitted *Pro Hac Vice*)
brichman@edelson.com
Christopher L. Dore (Admitted *Pro Hac Vice*)
cdore@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Mark Eisen (SBN – 289009)
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 90013
Tel: 213.533.4100
Fax: 213.947.4251

## TABLE OF CONTENTS

I. INTRODUCTION ....................................................................................................... 1

II. FACTUAL AND PROCEDURAL BACKGROUND ............................................. 3

    A. Plimus's Business Model. ............................................................................ 3

    B. MyPadMedia and Its UDWs. ...................................................................... 3

    C. Plimus Facilitates and Promotes the UDWs' Fraudulent Content. ............. 4

        1. Plimus Becomes Aware of the UDWs' Fraudulent Nature, But Does Nothing ................................................................................. 4

        2. Plimus Supports and Promotes the UDWs Despite Fraud. ............. 5

    D. The ECMP Program and MyPadMedia's Disqualification as a Plimus Vendor. ......................................................................................................... 6

    E. Facts Related to Plaintiff Yordy's Experience. ........................................... 7

III. ARGUMENT .............................................................................................................. 8

    A. The Standards for Class Certification. ......................................................... 8

    B. As an Initial Matter, the Proposed Class is Ascertainable. ......................... 9

    C. Rule 23(a)'s Requisites to Certification are Satisfied Here. ...................... 10

        2. The Numerosity Requirement is Satisfied. ................................... 10

        2. The Commonality Requirement is Satisfied. ................................ 11

            i. Whether Plimus knew that the products offered by the UDWs were fraudulent, but failed to suspend the UDWs or demand changes is a common question for the Class. ............................................... 12

            ii. Whether Plimus is liable for facilitating and promoting the content of the UDWs is a common question for the Class. ........................ 12

            iii. Whether the Class members suffered the same form of injury and are entitled to damages is a common question. .................... 14

        3. The Typicality Requirement is Satisfied. ..................................... 15

        4. The Adequacy of Representation Requirement is Satisfied. .......... 16

    D. Rules 23(b)(2)'s and (b)(3)'s Requisites to Certification are Satisfied. .......... 17

        1. The Proposed Class Satisfies Rule 23(b)(2)'s Requirements. ................... 17

        2. The Proposed Class Satisfies Rule 23(b)(3)'s Requirements. ................... 18

            i. The questions of law and fact common to Plaintiff's and the Class's claims for violations of California's UCL, CLRA, and FAL predominate over any individual issues. ........................ 18

ii. *The common questions of law and fact with respect to Plaintiff's and the Class's claims of fraud in the inducement and by omission, and negligent misrepresentation, predominate over any individual issues.* ...................................... 21

iii. *The common questions of law and fact with respect to Plaintiff's and the Class's breach of contract claim predominate over individual issues.* ............................................. 22

iv. *The class action is a superior method for the adjudication of this controversy.* .......................................................................... 23

  **E.**  **The Court Should Appoint Plaintiff's Counsel as Class Counsel.** ................... 25

**V.**  **CONCLUSION** ................................................................................................. 25

**TABLE OF AUTHORITIES**

**United States Supreme Court Cases:**

*Erica P. John Fund, Inc. v. Halliburton*, 131 S.Ct. 2179 (2011).................................................. 8, 19

*Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 130 S.Ct. 1431 (2010)............................... 8

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011)....................................................... 9, 11, 14

**United States Circuit Court of Appeals Cases:**

*Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010)......................................... 8, 17

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011).................................................. 11

*Hanlon v. Chrystler Corp.*, 150 F.3d 1011 (9th Cir. 1998).................................................... 15, 18

*In re First Alliance Mortgage Co.*, 471 F.3d 977 (9th Cir. 2006)........................................... 21, 22

*Lerwill v. Inflight Motion Pictures*, 582 F.2d 507 (9th Cir. 1978)........................................... 16

*Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012)......................................... 19

*Parra v. Bashas', Inc.*, 536 F.3d 975 (9th Cir. 2008) ............................................................. 11

*Pierce v. County of Orange*, 526 F.3d 1190 (9th Cir. 2008)................................................... 18

*Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592 (6th Cir. 2007) ..................... 10

*Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011) .............................................. 20

*United Steel v. ConocoPhillips Co.*, 593 F.3d 802 (9th Cir. 2010)........................................... 19

*United Steel, Paper & Forestry, Rubber, Mfg. Energy Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC, v. ConocoPhillips Co.*, 593 F.3d 802 (9th Cir. 2010).................. 9

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) ........................... 18, 23

*Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010) ................................ 20

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001)..................................... 17

**United States District Court Cases:**

*Arevalo v. Bank of Am. Corp.*, 850 F. Supp. 2d 1008 (N.D. Cal. 2011) .................................. 19

*Ashmus v. Calderon*, 935 F. Supp. 1048 (N.D. Cal. 1996) .................................................... 15

*Breeden v. Benchmark Lending Grp., Inc.*, 229 F.R.D. 623 (N.D. Cal. 2005) ........................... 24

*Cartwright v. Viking Indus., Inc, No. 07-CV-2159, 2009 WL 3872047 (E.D. Cal. Nov. 17, 2009)* ................................ 20

*Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544 (N.D. Cal. 2007)............................................... 10

*Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524 (N.D. Cal. 2004)..............................................18

*Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365 (N.D. Cal. 2010) .....................*passim*

*Cole v. Asurion Corp.*, 267 F.R.D. 322 (C.D. Cal. 2010) ..............................................................15

*Heastie v. Cmty. Bank of Greater Peoria*, 125 F.R.D. 669 (N.D. Ill. 1989)..............................10

*Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666 (N.D. Cal. 2011)..........................................9

*Hodes v. Van's Int'l Foods*, No. CV-09-01530, 2009 WL 2424214 (C.D. Cal. July 23, 2009).... 14

*Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505 (N.D. Cal. 2007) ..........................................15

*In re Ferrero Litigation*, 278 F.R.D. 552 (S.D. Cal. 2011)..........................................................18

*In re Rubber Chem. Antitrust Litig.*, 232 F.R.D. 346 (N.D. Cal. 2005).......................................10

*In re TFT–LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583 (N.D. Cal. 2010)........................14

*Johns v. Bayer Corp.*, 280 F.R.D. 551 (S.D. Cal. 2012)........................................................19, 20

*Joint Equity Comm. of Investors of Real Estate Partners, Inc. v.*
    *Coldwell Banker Real Estate Corp.*, 281 F.R.D. 422 (C.D. Cal. 2012)...........................22

*Kennedy v. Jackson Nat. Life Ins. Co.*,
    No. C 07-0371, 2010 WL 2524360 (N.D. Cal. June 23, 2010) .........................................21

*Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156 (N.D. Cal. 2011) ...............................19

*Missud v. Oakland Coliseum Joint Venture*,
    No. 12-02967, 2013 WL 812428 (N.D. Cal. Mar. 5, 2013)..............................................21

*Nat'l Seating & Mobility, Inc. v. Parry*,
    No. 10-02782, 2012 WL 2911923 (N.D. Cal. July 16, 2012)...........................................23

*Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.*,
    188 F.R.D. 365 (D. Or. 1998) ...........................................................................................14

*Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439 (N.D. Cal. 2008) ......................................24

*Pecover v. Elec. Arts Inc.*, No. 08-2820, 2010 WL 8742757 (N.D. Cal. Dec. 21, 2010) .............14

*Plascencia v. Lending 1st Mortgage*, 259 F.R.D. 437 (N.D. Cal. 2009) ......................................21

*Pryor v. Aerotek Scientific, LLC*, 278 F.R.D. 516 (C.D. Cal. 2011)............................................10

*Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012)................................11, 13

*Tait v. BSH Home Appliances Corp.*, No. CV-10-0711,
    2012 WL 6699247 (C.D. Cal. Dec. 20, 2012) ..................................................................13

*Vathana v. EverBank*, No. 09-02338 RS, 2010 WL 934219 (N.D. Cal. Mar. 15, 2010).............23

*Vedachalam v. Tata Consultancy Servs., Ltd.*,
  No. C 06-0963 CW, 2012 WL 1110004 (N.D. Cal. Apr. 2, 2012) ................................... 22

*Whitten v. ARS Nat. Services, Inc.*, 00 C 6080, 2001 WL 1143238 (N.D. Ill. Sept. 27, 2001)..... 17

*Williams v. City of Antioch*, No. 08-02301 SBA, 2010 WL 3632197 (N.D. Cal. Sept. 2, 2010) . 10

*Wolph v. Acer Am. Corp.*, 272 F.R.D. 477 (N.D. Cal. 2011)....................................................... 15

*Wyatt v. Creditcare, Inc.,* No. 04-03681, 2005 WL 2780684 (N.D. Cal. Oct. 25, 2005) ............. 16

*Zeisel v. Diamond Foods, Inc.,*
  No. C-10-01192, 2011 WL 2221113 (N.D. Cal. June 7, 2011) ........................................ 15

**State Court Cases:**

*In re Tobacco II Cases*, 46 Cal.4th 298 (2009) ....................................................... 19, 20

*Vasquez v. Superior Court of San Joaquin County,* 4 Cal.3d 800 (1971).................................... 22

**Statutory Provisions:**

False Advertising Law,
  California Business and Processions Code sections 17500 *et seq.* ...........................*passim*

Consumers Legal Remedies Act,
  California Civil Code sections 1750, *et seq.* ...........................................................*passim*

Unfair Competition Law,
  California Business and Professions Code sections 17200 *et seq.*...........................*passim*

Fed. R. Civ. P. 23 ............................................................................................*passim*

**Miscellaneous Authorities:**

1 Newberg on Class Actions § 3:5 (4th ed. 2002).............................................. 10, 24

5 Newberg on Class Actions, § 24.25 (3d ed. 1992) ........................................... 15

# I. INTRODUCTION

On October 29, 2013, this Court denied Plaintiff Kimberly Yordy's Supplemental Motion for Class Certification without prejudice.  (Dkt. 116, cited as the "10/29/13 Order".)  In so doing, the Court found that there was not sufficient evidence in the record to demonstrate that Defendant "Plimus's involvement in each [of the 19] UDW[s] [Unlimited Download Websites] was substantially similar," nor to demonstrate Plimus's active involvement in promoting each of the UDWs and therefore, that Rule 23's commonality, typicality and adequacy requirements could not be met with respect to proposed class members who had visited different UDWs.  (*Id.* at 6-9.) Notwithstanding, the Court indicated that Yordy had adduced sufficient evidence to suggest that Plimus, in fact, had an active role in the facilitation and promotion of third-party MyPadMedia's operation of several UDWs such that class certification may be appropriate with respect to those sites.  (*Id.* at 6.)

In light of that Order and after review of the available evidence, Yordy now submits this Renewed Motion for Class Certification, seeking to certify a far narrower class of only those individuals who visited MyPadMedia owned and operated sites—i.e., MyPadMedia.com, TheNovelNetwork.com, and/or TheReadingSite.com (collectively, the "UDWs").  Specifically, Plaintiff seeks to certify a class (the "Class") defined as follows:

> All persons in the United States who paid a fee processed by Plimus to access MyPadMedia.com, TheNovelNetwork.com, and/or TheReadingSite.com, excluding those persons who have received a refund from Plimus for the full amount of their fee.

As set forth in further detail *infra*, the evidence in the record establishes a firm connection between Plimus and the three MyPadMedia operated UDWs.  In particular, the evidence establishes that:

> 1. The UDWs were each owned and operated by the same umbrella company – MyPadMedia.  Plimus was aware of this fact, consistently referring to the "MyPadMedia Account", which encompassed the UDWs.  Accordingly, Plimus's communications with MyPadMedia create a uniform interaction with the sites MyPadMedia operated.
>
> 2. Each of the UDWs operated in an identical fashion, with nearly identical homepages and fraudulent pitches to unsuspecting consumers.
>
> 3. Plimus communicated frequently with the UDWs through MyPadMedia. These communications establish that Plimus was (a) aware of the fraudulent nature of the UDWs, (b) continued to work with MyPadMedia to promote the UDWs and attract more customers, and (c) exercised control over their content.

4.      Yordy and the proposed Class members were presented with the same deceptive offer on each MyPadMedia UDW: pay a one-time fee and receive unlimited access to downloadable eBooks. Plaintiff and the proposed Class members paid this fee, but did not receive what the UDWs promised.

These facts ultimately provide the answers to three questions common to the claims of each member of the proposed Class and upon which Plimus's liability to the Class as a whole will ultimately turn—namely, (i) whether Plimus knew of the fraudulent (and non-existent) nature of the products offered by MyPadMedia's UDWs; (ii) whether, despite that knowledge, Plimus continued to facilitate and promote MyPadMedia's UDWs; and (iii) whether Yordy and the members of the Class suffered similar injuries as a result of Plimus's conduct. The answers to these questions also lead to several common and predominant issues of law for the Class, including (i) whether Plimus's actions constitute violations of Cal. Bus. & Prof. Code §§ 17500, *et seq.*, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, and/or Cal. Civ. Code §§ 1750, *et seq.*; and (ii) whether Plimus's actions constitute fraud in the inducement, fraud by omission, negligent misrepresentation, and/or breach of contract.

In addition to presenting several common and predominate questions of fact and law, the record here also establishes that Rule 23's remaining requisites to certification are satisfied as well. That is, more than 30,000 consumers were injured in the form of the membership fees they paid Plimus to access the UDWs (numerosity); Yordy's claims are identical to those of the proposed Class inasmuch as she too paid a membership fee to access a MyPadMedia UDW but got nothing in return (typicality); Yordy and her counsel have devoted substantial time and resources to the pursuit of this action and will continue to do so throughout its pendency (adequacy of representation); and, given the small amount of damages Class members stand to recover—the UDWs' membership fees were typically $50.00—relative to the costs of pursuing their claims individually, a class action is clearly the superior method for adjudicating this controversy.

For all of these reasons and as explained further below, the proposed Class is appropriate for certification under Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3), and the instant motion may be granted in its entirety.

## II.     FACTUAL BACKGROUND

### A.     Plimus's Business Model.[1]

Plimus describes itself as "a global e-Commerce solutions provider" that "builds and manages online businesses for thousands of software publishers, Web hosting companies and online retailers."  (*See* the Declaration of Benjamin H. Richman ("Richman Decl.") attached hereto as Exhibit A, ¶ 3.)  At the center of Plimus's promotional efforts is the Plimus Marketplace, an online clearinghouse where vendors, including MyPadMedia's UDWs, are introduced to affiliate advertisers interested in promoting and advertising their various products and services for a fee. (*Id.*, Ex. 1; *see also* Deposition of Christopher Bean, attached as Ex. 3 to the Richman Decl., at 115:22-116:7.)

For its part, Plimus profits from the success of its vendors by retaining a percentage of each product sold, and therefore has every incentive to maximize sales.  (*See* Deposition of Mark Hassin, attached as Ex. 4 to the Richman Decl., at 52:22-53:20; Richman Decl., Ex. 5 at 10-22.)  The primary means by which Plimus maximizes its vendors' sales is through the creation of a network of affiliate advertisers who browse Plimus's vendors' products on the Plimus Marketplace and select as many as they wish to advertise for.  (Ex. 7 (UDW had 4000 affiliates)).

In addition to hosting and overseeing its network of vendors and affiliates, Plimus offers vendors services designed to increase the visibility of their sites and products and thus drive sales, including assistance with promoting, building and attracting a network of affiliate advertisers, and help establishing cross-marketing deals with other vendors.  (Exs. 10-11.)  Successful vendors are also featured in Plimus' weekly affiliate offers program. (Ex. 1; Ex. 3 at 19:16.)  Likewise, vendors receive specialized, Plimus-designed and hosted payment processing pages.

### B.     MyPadMedia and Its UDWs.

One of Plimus's highest performing vendors was MyPadMedia, which owned and operated the UDWs.  (Exs. 8, 9, 10, 11, 12, 49.)[2]  Each of the MyPadMedia UDWs made identical pitches to

---

[1]      Given the Court's familiarity with the facts of this action, Yordy provides here only an abbreviated summary of Plimus's business model.  For a more complete background, *see* Docket No. 95, Plaintiff's Supplemental Motion for Class Certification at 3-5.

[2]      The Court stated in the 10/29/13 Order that "Yordy identified evidence of communications between Plimus and only one UDW at issue: MyPadMedia.com."  (10/29/13 Order at 6.)  For the

consumers, promising unlimited access to electronic books for a one-time membership fee while prominently featuring images of popular titles, like The Hunger Games and The Girl with the Dragon Tattoo, alongside language indicating top 10 books were available. (Ex. 13.)[3] For its part, TheNovelNetwork.com featured images of the Twilight series and The Lord of the Rings series, alongside language reading "Any Book Any Time!" (*Id.*) TheReadingSite.com featured images of a James Patterson novel and the Harry Potter series, alongside language reading "Millions of Ebooks!" (*Id.*) And, MyPadMedia.com featured images of Winnie the Pooh and the Da Vinci Code, alongside language reading "Unlimited eBooks for the iPad". (*Id.*) Despite these representations, however, the UDWs did not actually provide unlimited access to best selling content, but rather access to works that were already publicly available for free or access to nothing at all.

The evidence adduced makes clear that Plimus was well aware that MyPadMedia controlled and operated MyPadMedia.com, TheNovelNetwork.com, and TheReadingSite.com. (Exs. 7, 8, 9, 10, 11, 12.) Indeed, correspondence between MyPadMedia and Plimus shows that Plimus interacted with MyPadMedia as a single vendor/entity that controlled these several sites. (Exs. 8, 10, 11, 12, 14, 27.) Furthermore, the evidence demonstrates that Plimus knew of the fraudulent nature of each of the UDWs and that Plimus employees not only frequently discussed their fraudulent nature, but also received numerous DMCA takedown notices from copyright holders regarding the content on the UDWs. (Exs. 10, 15, 16, 17, 18, 21.)

**C.      Plimus Facilitates and Promotes the UDWs' Fraudulent Content.**

1.      Plimus Becomes Aware of the UDWs' Fraudulent Nature, But Does Nothing.

Almost immediately upon it becoming a Plimus vendor, Plimus employees were cognizant of MyPadMedia's high volume of sales and its unusually high number of refund requests, chargebacks, and customer complaints. (Exs. 15, 16, 19, 21.) These requests and complaints were all "saying the same thing" – "product not as expected / presented." (Ex. 15; Ex. 20 (excerpts of

---

sake of clarification, it bears noting that the relevant communications identified throughout this motion are between Plimus and MyPadMedia the company, which owned and operated MyPadMedia.com, TheNovelNetwork.com, and TheReadingSite.com websites.
[3]      Screenshots of the UDWs demonstrate that they were identical in style and sales pitch. (*See* Ex. 13.)

1  customer complaints regarding the UDWs).)  In fact, it is evident from Plimus's internal

2  communications that Plimus was aware as early as March 30, 2011 that "[MyPadMedia] misleads

3  their customer base – this is a fact, but this is how they make money."  (Exs. 16, 21.)

4      Not six months into MyPadMedia's tenure as a Plimus vendor, on May 18, 2011, Plimus

5  received the first DMCA takedown notice regarding the fraudulent and infringing use of Harry

6  Potter images on TheNovelNetwork.com and TheReadingSite.com.  (Ex. 11.)  Plimus investigated

7  and demanded that MyPadMedia remove the offending content from various locations on the sites.

8  (Ex. 22.)  Though Plimus undoubtedly viewed the entirety of the sites during that investigation, it

9  demanded *only* that the Harry Potter images be taken down.  (*Id.*)

10     Similarly, on August 11, 2011, Plimus was made aware that an Australian media outlet had

11 been investigating MyPadMedia.com and TheNovelNetwork.com for similar fraudulent practices.

12 (Ex. 17.)  Rather than attempting to curb the practices in question, however, Plimus stated "[a]t this

13 point – if there has been no backlash – I guess we just let it go."[4]  (*Id.*)

14     On September 6, 2011, Plimus received a DMCA takedown notice regarding another of

15 MyPadMedia's affiliate sites.  (Ex. 23.)  PayPal received the same notice and forced Plimus to

16 remove PayPal as a payment option from all MyPadMedia accounts.  (Ex. 24.)  Again, Plimus

17 actively worked to return PayPal to the MyPadMedia UDWs, which it did ten days later.  (*Id.*)

18     And, on October 24, 2011, Plimus received another DMCA takedown notice regarding the

19 fraudulent and infringing use of the Harry Potter brand and related images on the

20 TheReadingSite.com.  (Ex. 25, 28.)  Once again, Plimus worked with MyPadMedia to have only

21 that specific material removed and the MyPadMedia UDWs – which had been deactivated until the

22 Harry Potter images were removed – were reactivated and running within one week.  (Ex. 29.)

23          2.    Plimus Supports and Promotes the UDWs Despite Fraud.

24     Despite the countless customer complaints regarding the fraudulent nature of the

25 MyPadMedia UDWs, its employees' clear knowledge of that fraudulent activity, three DMCA

26

27

28 [4]   That Plimus had the option to take action or "just let it go" is an obvious indiciation of its control over the activities and content of the UDWs.

1   takedown notices, and a media inquiry regarding the UDWs' purported fraudulent activities, Plimus

2   simply pushed forward and even increased its support and promotion for the sites.

3       First, on July 25, 2011, Plimus assigned MyPadMedia an account manager to "help [it]

4   increase [its] sales" and address "any question or need". (Ex. 30.)  By August 16th, Plimus had

5   reformatted the content of MyPadMedia's offer email. (Ex. 31.)  By August 21st, Plimus, referring

6   to MyPadMedia as a "VIP", was working to reformat the Plimus "buy now" pages on all the

7   MyPadMedia sites. (Ex. 33.)  By late September 2011, Plimus was exploring options to promote

8   MyPadMedia and increase the number of advertisers in the MyPadMedia's affiliate network,

9   including eventually promoting MyPadMedia's products in the official Plimus "Recommended"

10  section of the Plimus Marketplace. (Ex. 34.)  And by early December 2011, just days before

11  MyPadMedia was formally suspended, Plimus was seeking to add additional methods of payment

12  processing to MyPadMedia's account – even though Plimus employees acknowledged that

13  "[MyPadMedia] is…the reason we have [the instant] class action lawsuit against [Plimus] right

14  now…." (Ex. 26.) [5]

15      Screenshots also establish the lengths Plimus went to promote MyPadMedia.  For example,

16  Plimus actively recommended MyPadMedia and its sites to Plimus's affiliate advertisers. (Ex. 35.)

17  All three of the UDWs were highly rated in the Plimus Marketplace. (Ex. 36.)  And as late as

18  November 20, 2011, images of the Plimus-branded "buy now" page and the Plimus trademark

19  appeared on TheNovelNetwork.com alongside the fraudulent "unlimited downloads" offer and

20  infringing images of popular book titles. (Ex. 37.)

21      In other words, despite Plimus's clear knowledge of the UDWs' fraudulent content, Plimus

22  actively worked with MyPadMedia to promote the sites.  When Plimus should have been

23  terminating its relationship with MyPadMedia, or demanding all fraudulent/infringing content be

24  removed, it was instead working to increase sales on and the advertising presence of the UDWs.

25

26  _____

[5]      Even after it had formally suspended MyPadMedia, Plimus continued to work with
27  MyPadMedia and allowed it to operate for two additional weeks. (Ex. 39.)  Plimus even considered
an additional extension to allow MyPadMedia to sell its UDWs while it still had an active Plimus
28  account, but Plimus decided to "move forward with the suspension as scheduled" because "[t]he
sale of the business with an active Plimus account [could get it] into more trouble." (Ex. 47.)

**D.    The ECMP Program and MyPadMedia's Disqualification as a Plimus Vendor.**

Beginning in August 2009, Plimus began enrolling vendors who received an exorbitant number of "chargebacks" into their Excessive Chargeback Monitoring Program ("ECMP"). (Ex. 41; Ex. 43 at 86:17-88:14.)[6]  Specifically, once chargebacks exceeded a certain level of chargebacks per month, vendors were placed in the ECMP program and charged increasing levels of fees until they reduced their chargebacks below a certain threshold. (Ex. 41.)  MyPadMedia and its UDWs were a part of the ECMP program from at least April 2011 until they were formally suspended from the Plimus platform in December 2011. (Ex. 40.)

The ECMP demonstrates that instead of demanding that vendors remove all fraudulent and infringing content from their sites—which appears to be the cause of many of MyPadMedia's chargebacks—Plimus simply charged its vendors additional and increasing fees. (Ex. 41; Ex. 43 at 86:17-88:14.)  Evidence indicates that some vendors stayed in the program for nearly two years, continued to have high chargebacks, and continued to pay additional fees to Plimus. (Exs. 42, 44.)  Accordingly, not only was Plimus aware of the fraudulent nature of its vendors—including MyPadMedia—it used the fraud to create additional revenue streams for itself.

Though Plimus did eventually suspend MyPadMedia under the auspices of the ECMP program, the evidence shows that "the main issue of the closure of the account [was] related to the [instant] class action." (Ex. 45.)  In other words, despite the clear fraud MyPadMedia was perpetrating, and despite Plimus's knowledge of the fraud, Plimus was more than happy to continue profiting off of it until legal action was taken. And Plimus, in fact, profited handsomely for its role in the facilitation and promotion of the MyPadMedia UDWs, processing some 30,000 transactions for the UDWs and collecting nearly $1.5 million in sales as a result.[7]  (Ex. 5 at 9-11.)

---

[6]    A chargeback results whenever a consumer disputes a transaction with its bank or credit card company (collectively the "Bank").  The bank has the authority to simply reverse the transaction, which reflects poorly on Plimus.  In fact, excessive chargeback rates appear to have been Plimus's predominant concern with its vendors.

[7]    It bears noting, however, that regarding the UDWs, Plimus received over 8,000 refund requests (totaling over $350,000) and over 800 chargebacks (totaling nearly $40,000) from aggrieved customers. (Ex. 5 at 12-14.)  In other words, about *1 in 4 customers sought a refund.*

**E.      Facts Related to Plaintiff Yordy's Experience.**

In July 2011, Plaintiff Yordy was enticed by a web advertisement operated by one of Plimus's affiliates, offering access to unlimited downloads of numerous bestselling eBooks.  (Dkt. 32, [First Am. Compl. ("FAC")] ¶ 53.)  Intrigued, Yordy clicked on the link and was immediately transferred to TheNovelNetwork.com, where she was again presented with the same unlimited access offer for a one-time membership fee of $49.95.  (*Id.* ¶¶ 53, 55; *See* Deposition Transcript of Kimberly Yordy, attached as Ex. 48, at 56:7-18.)  In addition, the website boasted a number of "consumer" testimonials, verbiage exalting the benefits of a membership with TheNovelNetwork.com, and several images of popular titles available for download. (FAC ¶ 54.) Convinced that TheNovelNetwork.com was a legitimate website and drawn by its representations, Plaintiff provided her contact and billing information to Plimus through the Plimus "buy now" page and was subsequently directed to TheNovelNetwork.com's membership page. (*Id.* ¶¶ 56-58.)

Once there, Plaintiff discovered—much to her chagrin—that she had been duped by promises of unlimited access to bestselling titles.  In return for her $50, she didn't receive access to all of the eBook downloads she'd been promised; instead, TheNovelNetwork.com provided Yordy links to eBooks that were already publicly available for free.  (*Id.* ¶ 58.)  Upon this revelation, Yordy contacted customer support for TheNovelNetwork.com and requested that her membership be cancelled and that Plimus refund in full the fees it charged for her "membership." (*Id.* ¶ 59.) Yordy never received a response, explanation or refund from Plimus. (*Id.* ¶ 60.)

**III.    ARGUMENT**

**A.      The Standards for Class Certification.**

Federal Rule of Civil Procedure 23 provides that "[a] class action may be maintained if two conditions are met—the suit must satisfy the criteria set forth in subdivision (a) (*i.e.* numerosity, commonality, typicality, and adequacy of representation), and it must also fit into one of the three categories described in subdivision (b)."  *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010) (quoting *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1437 (2010)).  Here, Plaintiff seeks certification of the proposed Class under Rule 23(b)(2), which requires that the defendant acted or failed to act on grounds generally applicable to the proposed

1   class, "so that final injunctive relief or corresponding declaratory relief is appropriate," and also

2   Rule 23(b)(3), which requires that both common questions of law or fact predominate and that the

3   maintenance of the suit as a class action is superior to other methods of adjudication.  Fed. R. Civ.

4   P. 23(b); *see also Erica P. John Fund, Inc. v. Halliburton*, 131 S. Ct. 2179, 2184 (2011).  Although

5   in some cases it may be necessary for the court to "probe behind the pleadings" in order to

6   determine if a plaintiff has met Rule 23's requirements, a court should only consider the merits of

7   the plaintiff's claims insofar as they overlap with Rule 23's certification requirements.  *Wal-Mart*

8   *Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551-52 (2011); *see also United Steel, Paper & Forestry,*

9   *Rubber, Mfg. Energy Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC, v. ConocoPhillips*

10  *Co.*, 593 F.3d 802, 808 (9th Cir. 2010) (noting that although "certification inquiries such as

11  commonality, typicality, and predominance might properly call for some substantive inquiry, the

12  court may not go so far…as to judge the validity of these claims.") (internal quotations omitted).

13          In this case, the pleadings and evidence gathered are more than sufficient to support class

14  certification.  Indeed, documents and information produced by Plimus, as well as the depositions of

15  a number of its officers and employees, have revealed the extent to which Plimus promoted and

16  assisted the MyPadMedia UDWs in order to maximize its own profits (and with them, injury to the

17  proposed Class).  Accordingly, the proposed Class in this case satisfies each of Rule 23(a)'s

18  prerequisites and the requirements for certification under both Rules 23(b)(2) and (b)(3).

19          **B.      As an Initial Matter, the Proposed Class is Ascertainable.**

20          Though not explicit in the language of Rule 23(a), as a threshold matter courts frequently

21  suggest that the members of the proposed class must be "clearly ascertainable before a class action

22  may proceed."  *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 376 (N.D. Cal. 2010)

23  (listing cases).  "[A]n identifiable class exists if its members can be ascertained by reference to

24  objective criteria."  *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 672 (N.D. Cal. 2011).

25          The Court previously found that the class presented for certification in Yordy's prior motion

26  was ascertainable.  (*See* 10/29/13 Order at 5.)  Though the proposed class here is smaller (30,000

27  rather than 80,000 persons), the result is no doubt the same – the class is ascertainable.[8]  Indeed,

28  _____

    [8]        To avoid duplicative briefing, Plaintiff submits an abbreviated argument on this point.

1   Class membership may still be ascertained by reference to Plimus's own business records that

2   identify each of the individuals who visited MyPadMedia's UDWs and were charged a membership

3   fee, but did not receive a full refund.  (*See* Ex. 5 at 9-14);[9] *see also Pryor v. Aerotek Scientific, LLC*,

4   278 F.R.D. 516, 523 (C.D. Cal. 2011) (finding a class ascertainable where "all the parameters for

5   membership in this class are objective criteria, and defendants' business records should be sufficient

6   to determine the class membership status of any given individual."). And, because each member of

7   the putative class was exposed to the same "allegedly false advertising because they would have had

8   to access [the UDWs] to pay the membership fee[,]… no individualized inquiry is required to

9   determine class membership, and the class is ascertainable as defined." (10/29/13 Order at 5.)

10         Thus, the ascertainability requirement is satisfied.

11         **C.     Rule 23(a)'s Requisites to Certification are Satisfied Here.[10]**

12                 1.     The Numerosity Requirement is Satisfied.

13         Turning to the requirements of Rule 23, Rule 23(a) first requires that "the class is so

14   numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1).  Generally,

15   "numerosity" is satisfied when the class comprises 40 or more members. *Celano v. Marriott Int'l*

16   *Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007).  Where, as here, a class numbers in the thousands, the

17   requirement is "clearly" satisfied.  *See, e.g., Heastie v. Cmty. Bank of Greater Peoria*, 125 F.R.D.

18   669, 674 (N.D. Ill. 1989).  Nonetheless, a plaintiff need not demonstrate the exact number of class

19   members in order to satisfy this requirement, nor is there a specific number of class members that

20   must be met.  *In re Rubber Chem. Antitrust Litig.*, 232 F.R.D. 346, 350-51 (N.D. Cal. 2005).

21         Discovery shows that Plimus processed over 30,000 transactions for MyPadMedias's

22   UDWs.  (*See* Ex. 5 at 9-10.)  This indicates a significant number of aggrieved consumers, which

23   easily satisfies numerosity.  *See* NEWBERG ON CLASS ACTIONS § 3:5, 243-46 ("Class actions…have

24

25   [9]     Plimus maintains records of each transaction processed through its vendors' website, including the name, address, credit card number and purchase details associated with that transaction.  (*See* Ex. 4 at 43:18-44:8.)

26   [10]    To the extent the Court finds that the Rule 23(a) requirements are not satisfied by the current

27   class definition, Yordy respectfully requests that the Court exercise its discretion to modify the class definition as it sees fit.  *See Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 619

28   (6th Cir. 2007) ("[D]istrict courts have broad discretion to modify class definitions…."); *Williams v. City of Antioch*, No. 08-cv-02301 SBA, 2010 WL 3632197, at *7 (N.D. Cal. Sept. 2, 2010) (same).

frequently involved classes numbering in the hundreds, or thousands…the impracticability of bringing all class members before the court has been obvious, and [numerosity] has been easily met."); *see also* 10/29/13 Order at 5.

### 2. The Commonality Requirement is Satisfied.

The second threshold to certification under Rule 23(a) requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality may be demonstrated when the claims of all class members "depend upon a common contention" and "even a single common question will do."  *Dukes*, 131 S.Ct. at 2545, 2556; *see also Parra v. Bashas', Inc.*, 536 F.3d 975, 978 (9th Cir. 2008) ("[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class").  The common contentions must be such that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Dukes*, 131 S.Ct. at 2551.  In other words, as the Court indicated in its 10/29/13 Order, common questions alone are necessary but not sufficient—the common questions must be able to generate common answers.  *Id.*; 10/29/13 Order at 6.[11]  As the Ninth Circuit recently clarified:

> [I]t is insufficient to merely allege any common question, for example, 'Were Plaintiffs passed over for promotion?' . . .  Instead, they must pose a question that 'will produce a common answer to the crucial question why was I disfavored.'… In other words, *Plaintiffs must have a common question that will connect many individual promotional decisions to their claim for class relief.*

*Ellis*, 657 F.3d at 981 (quoting Dukes, 131 S. Ct. at 1551-52) (emphasis added).

The common questions in this case necessarily have the capacity to generate the common answers upon which Plimus's liability turns.  To paraphrase *Ellis*, Plaintiff's common questions undoubtedly connect Plimus's involvement in promoting and assisting known fraudulent websites to the Class's claims for relief.  Importantly, post-*Dukes*, "the underlying substantive law remains the same…."  *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 538 (N.D. Cal. 2012).  Here, the alleged violations of California's FAL, CLRA, and UCL statutes, as well as Yordy's common law claims, all involve legal questions with the same factual predicates for each member of the

---

[11]     *Dukes* notwithstanding, commonality is "construed permissively". *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (reiterating the permissive construction post-*Dukes*).

proposed Class—that is, they all derive from Plimus's facilitation, promotion, and assistance of the UDWs' fraudulent activities.

> i. *Whether Plimus knew that the products offered by the UDWs were fraudulent, but failed to suspend the UDWs or demand changes is a common question for the Class.*

Whether Plimus knew that the digital products the UDWs were offering were in fact fraudulent (and non-existent, for that matter), but failed to take corrective action is a question common to all of the proposed Class members and capable of classwide determination.  In particular, the evidence (as discussed in detail in Section II.C, *supra*) demonstrates that Plimus was well aware of, facilitated, and promoted the UDWs' fraudulent activities.  Multiple pieces of evidence, including communications relating to the fraudulent nature of MyPadMedia, the sites it ran and communications relating to chargebacks, refunds, complaints, and copyright infringing content clearly indicate that Plimus was aware of the type of content it was promoting for MyPadMedia and its UDWs. Specifically, the evidence adduced demonstrates that:

- Plimus received numerous complaints regarding the deceptive and fraudulent nature of MyPadMedia's UDWs.  (Exs. 15, 20, 21.)
- Plimus received multiple DMCA takedown notices regarding infringing content on the UDWs and was aware of a media inquiry relating to the UDWs fraudulent practices.  (Exs.11, 17, 23, 25.)
- Communications between Plimus employees show awareness and open acknowledgment of the UDWs fraud.  (Ex. 16.)
- Plimus received numerous consumer complaints regarding the UDWs failure to provide the products offered. (Exs. 15, 20, 21.)
- Plimus assigned MyPadMedia an Account Manager to aid it in attracting more customers and named MyPadMedia one of its VIPs.  (Exs. 30, 33-34.)
- Plimus promoted MyPadMedia to its advertising affiliates.  (Exs. 35-36.)

Accordingly, the ultimate answer to the question of Plimus's knowledge of the fraudulent nature of MyPadMedia's UDWs is one that is common to the Class as a whole. As such, Rule 23(a)'s commonality requirement is satisfied.

> ii. *Whether Plimus is liable for facilitating and promoting the content of the UDWs is a common question for the Class.*

Next, the primary question at the heart of this action is whether Plimus facilitated and promoted the content of the UDWs.  This common question will naturally provide a critical answer

common to the Class, and is instrumental in establishing whether Plimus is liable to Yordy and the Class for violations of the FAL, CLRA and UCL, as well as their common law claims.[12]  The evidence adduced shows that these common questions of law and fact can be answered on a class-wide basis as well.

As set forth above, Plimus was plainly aware that MyPadMedia operated fraudulent UDWs and, nonetheless, promoted and provided other support to the UDWs.  Specifically, the evidence adduced demonstrates that Plimus:

- Assigned MyPadMedia an Account Manager. (Ex. 30.);
- Reformatted the content of MyPadMedia's offer emails. (Ex. 31);
- Reformatted the UDWs' "Buy Now" pages. (Ex. 33);
- Promoted MyPadMedia's products on the official Plimus "Recommended" section of the Marketplace. (Exs. 34-35);
- Fought to maintain, and even tried to add, additional methods of payment processing (Exs. 24, 26);
- Allowed MyPadMedia to stay active on the Plimus platform even after formally suspending it.  (Ex. 39.);

As Yordy previously explained in her briefing, the *Chavez v. Blue Sky Natural Beverage Co.* case is particularly instructive on this point. There, the defendant was accused of misrepresenting a material feature of its products—i.e., their geographical origin—thereby inducing customers to purchase them on the belief they originated in New Mexico. 268 F.R.D. at 368-69.  As in this case, the plaintiff also alleged violations of California's FAL, CLRA, and UCL statutes, and sought certification of a class of all consumers who purchased the products.  *Id.*  In granting certification, the court found the resolution of defendant's liability under these statutes to include "common issues of fact and law to satisfy Rule 23(a)(2): whether [defendant's] packaging and marketing materials are unlawful, unfair, deceptive or misleading to a reasonable consumer." *Id.* at 377.

---

[12]      Courts in the Ninth Circuit routinely find the element of commonality met in cases where the FAL, CLRA, and UCL claims of all prospective class members are susceptible to common proof.  *See, e.g., Tait v. BSH Home Appliances Corp.*, No. SA CV 10-0711 DOC, 2012 WL 6699247, at *5 (C.D. Cal. Dec. 20, 2012); *see also Chavez*, 268 F.R.D. at 377.  Furthermore, "[a]s with the UCL and FAL, under the CLRA, [c]ausation, on a class[-]wide basis, may be established by *materiality*.  If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class."  *Ries*, 287 F.R.D. at 538.

---

Similarly, commonality has also been found where a defendant assists in the design of marketing and advertising materials on behalf of the ultimate seller. *See, e.g., Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.*, 188 F.R.D. 365, 373 (D. Or. 1998) (class certified against tobacco companies and advertising agency who utilized deceptive advertising and marketing to promote products); *Hodes v. Van's Int'l Foods*, No. CV 09-01530 RGK FFMX, 2009 WL 2424214, at *2 (C.D. Cal. July 23, 2009) (commonality found where manufacturer misrepresented nutritional information on packaging ultimately sold by grocery store).

Given the allegations and evidence relating to Plimus's involvement in the UDWs, the same reasoning applies here and the Court should find that Rule 23's commonality requirement is satisfied for these reasons as well.

<blockquote>iii.    *Whether the Class members suffered the same form of injury and are entitled to damages is a common question.*</blockquote>

A third common question is whether Yordy and the proposed Class members all suffered similar injuries entitling them to similar relief. *See, e.g., Dukes*, 131 S. Ct. at 2551; *see also Ries*, 287 F.R.D. at 538 ("Plaintiffs meet the *Dukes* standard because the entire proposed class has suffered the same injuries flowing from the alleged misrepresentations…."). Where the conduct central to the injuries suffered by the plaintiff and proposed class members is the same, slight variations in the amount of damages incurred will not disrupt a finding of commonality. *See Pecover v. Elec. Arts Inc.*, No. 08-2820 VRW, 2010 WL 8742757, at *11 (N.D. Cal. Dec. 21, 2010) ("Different amounts of damage sustained…, however, are not enough to defeat class certification."); *see also In re TFT–LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, (N.D. Cal. 2010).

Yordy alleges Plimus's conduct resulted in each member of the proposed Class suffering monetary damages in the form of the "membership" fees they paid to access the UDWs' products. (FAC ¶¶ 1, 38-42; *see generally* Ex. 5 at 10-12.)  Thus, the issue of damages and relief available to the Class supports a finding of commonality.

\*               \*               \*

In the end, the answers to all of these common questions depend on an examination of Plimus's conduct, which was identical towards each member of the proposed Class. And, to the extent that any individualized issues exist at all, they will be peripheral to the dispositive issues

1   outlined above. Accordingly, Rule 23(a)(2)'s requisite to certification is satisfied in this case.

2                                 3.      The Typicality Requirement is Satisfied.

3         The third prerequisite under Rule 23(a) is satisifed where the claims of class representatives

4   are typical of those of the putative class members, "assuring that the interest of the named

5   representative aligns with the interests of the class." Fed. R. Civ. P. 23(a)(3); *Hunt v. Check*

6   *Recovery Sys., Inc.*, 241 F.R.D. 505, 510 (N.D. Cal. 2007). This requirement is closely related to

7   that of commonality and is satisfied if a plaintiff's claims arise from the same practice or course of

8   conduct that gives rise to the claims of other class members. *Cole v. Asurion Corp.*, 267 F.R.D.

9   322, 326 (C.D. Cal. 2010); *see also Ashmus v. Calderon*, 935 F. Supp. 1048, 1066 (N.D. Cal. 1996)

10  ("[A] finding of commonality will ordinarily support a finding of typicality."). "Under the rule's

11  permissive standards, representative claims are 'typical' if they are reasonably coextensive with

12  those of absent class members; they need not be substantially identical." *Zeisel v. Diamond Foods,*

13  *Inc.*, No. 10-cv-01192 JSW, 2011 WL 2221113 at *7 (N.D. Cal. June 7, 2011) (citing *Hanlon v.*

14  *Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)); *see also* 5 NEWBERG ON CLASS ACTIONS, §

15  24.25 (3d ed. 1992) (Typicality "does not mean that the claims of the class representative[s] must be

16  identical or substantially identical to those of the absent class members."). This approach takes into

17  consideration the likelihood that specific scenarios may vary from individual to individual, but that

18  "[t]ypicality can be satisfied despite different factual circumstances...." *Wolph v. Acer Am. Corp.*,

19  272 F.R.D. 477, 486 (N.D. Cal. 2011). Relevant here and as the Court noted in its 10/29/13 Order,

20  "Yordy must at least establish that Plimus's involvement in each UDW was substantially similar

21  such that Yordy's claims gainst Plimus relating to TheNovelNetwork.com are representative of the

22  claims that would be asserted against Plimus by visitors to the other UDWs." (10/29/13 Order at 8.)

23        In this case, Plaintiff Yordy's claims are reasonably coextensive with the claims of the

24  proposed Class members. Plaintiff visited one of MyPadMedia's UDWs – TheNovelNetwork.com –

25  viewed advertisements and representations purporting to offer unlimited downloads and access to

26  thousands of best-selling digital media titles, was induced to pay a one-time membership fee as a

27  result, and did not receive what was promised. (*See generally* Dkt. 32.) Likewise, all proposed

28  Class members who visited one of the three MyPadMedia UDWs were confronted with

1 │ substantially identical misrepresentations promising unlimited access to eBooks and provided

2 │ payment only to receive much less than they bargained for.  (*See e.g.*, Ex. 16.)

3 │       Once again, *Chavez* is instructive here.  In that case, the court found that typicality was

4 │ satisfied where the defendant's practice of deceptively promoting and selling fraudulent products to

5 │ the named plaintiff and the proposed class resulted in the claims of the potential plaintiffs "aris[ing]

6 │ out of the allegedly false statement…and therefore aris[ing] from the same facts and legal theory."

7 │ *Chavez*, 268 F.R.D. at 378.  Here, Yordy's and the Class's claims arise out of substantially similar

8 │ advertising and Plimus's identical course of conduct, are based on the same legal theories, and

9 │ resulted in the same injury (i.e., damages in the form of membership fees).  Accordingly, the

10 │ typicality requirement is satisfied too.

11 │                    4.       The Adequacy of Representation Requirement is Satisfied.

12 │       The final Rule 23(a) prerequisite requires that the representative parties have and will

13 │ continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This

14 │ requirement is two-fold and requires that "[f]irst, the named representatives must appear able to

15 │ prosecute the action vigorously through qualified counsel, and second, the representatives must not

16 │ have antagonistic or conflicting interests with the unnamed members of the class." *Wyatt v.*

17 │ *Creditcare, Inc.*, No. 04-03681-JF, 2005 WL 2780684, at *5 (N.D. Cal. Oct. 25, 2005) (quoting

18 │ *Lerwill v. Inflight Motion Pictures*, 582 F.2d 507, 512 (9th Cir. 1978)).

19 │       Yordy has the same interests as the proposed Class – all seek to be recompensed for the

20 │ money they paid in the form of membership fees to MyPadMedia and Plimus.  Yordy has actively

21 │ participated in this litigation by responding to multiple sets of discovery, traveling and sitting for

22 │ deposition, and otherwise assisting counsel in their prosecution of the case.  She did not bring this

23 │ case to enrich herself, and has demonstrated as much by acting as a zealous advocate for the Class,

24 │ putting their interests ahead of her own.  (*See* Ex. 48 at 37:23-38:3 ("What matters to me is these

25 │ people quit scamming all the people that are coming to them for this service and not getting it.").)

26 │ Thus, it should be clear that Yordy has no interests antagonistic to those of the proposed Class.

27 │       Similarly, proposed class counsel, Edelson PC, have regularly engaged in major complex

28 │ litigation, and have extensive experience in consumer class action lawsuits involving products

1    promoted and sold over the Internet. (*See* Richman Decl., ¶¶ 52-54.)  Plaintiff's counsel have been

2    appointed as class counsel in several complex consumer class actions, including in cases asserting

3    claims on behalf of putative classes of allegedly fraudulent and deceptive sales and marketing

4    practices similar to those at issue here.  (*Id.*); *see also Whitten v. ARS Nat. Services, Inc.*, 00 C 6080,

5    2001 WL 1143238, at *4 (N.D. Ill. Sept. 27, 2001) ("The fact that attorneys have been found

6    adequate in other cases is persuasive evidence that they will be adequate again."). Accordingly,

7    Yordy's counsel will also adequately represent the proposed Class and should be appointed class

8    counsel.

9         Thus, the final Rule 23(a) requisite has been satisfied and class certification is appropriate.

10        **D.     Rules 23(b)(2)'s and (b)(3)'s Requisites to Certification are Satisfied.**

11        In addition to satisfying the requirements of Rule 23(a), Yordy must demonstrate that the

12   proposed Class meets at least one of the three requirements of Rule 23(b).  *Zinser v. Accufix*

13   *Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Here, Yordy seeks certification of the

14   Class under both Rules 23(b)(2) and (b)(3), the requirements of which are easily satisfied as well.

15        1.     The Proposed Class Satisfies Rule 23(b)(2)'s Requirements.

16        Rule 23(b)(2) provides that the party opposing certification must have acted or failed to act

17   on grounds generally applicable to the proposed class as a whole, "so that final injunctive relief or

18   corresponding declaratory relief is appropriate…." Fed. R. Civ. P. 23(b)(2); *Bateman*, 623 F.3d at

19   712.  In this case, injunctive relief is appropriate and necessary to ensure that Plimus does not

20   continue to promote or advertise fraudulent offers of unlimited digital media as it did with the

21   MyPadMedia UDWs.

22        As discussed in detail above, Plimus acted on grounds generally applicable to the proposed

23   Class as a whole by promoting and assisting the MyPadMedia UDWs, facilitating the sale of their

24   products, and overseeing their website content.  Further, Plimus did so even after receiving

25   numerous complaints from consumers regarding the deceptive nature of the UDWs as well as from

26   copyright holders who requested the takedown of infringing materials.  Yordy and the proposed

27   Class members viewed and relied upon the misrepresentations made on the UDWs – which Plimus

28   facilitated and promoted – and were damaged in the form of the membership fees they paid.

1       Absent injunctive relief, Plimus will remain free to continue perpetuating its deceptive and

2   fraudulent marketing and promotional efforts on behalf of MyPadMedia.  Injunctive relief is thus

3   appropriate in this case and could be reasonably tailored to prohibit Plimus from misrepresenting –

4   through the UDWs themselves or through any of Plimus's promotional or advertising efforts – that

5   the UDWs offer unlimited access to digital media, when in fact they do not.  Accordingly, the

6   prerequisites of Rule 23(b)(2) are satisfied where Plimus acted on grounds generally applicable to

7   the Class as a whole, making final injunctive relief necessary to protect Yordy and the proposed

8   Class from such conduct in the future.

9                       2.       The Proposed Class Satisfies Rule 23(b)(3)'s Requirements.

10      Next, Rule 23(b)(3) provides that a class action can be maintained where: (1) the questions

11  of law and fact common to members of the class predominate over any questions affecting only

12  individuals, and (2) the class action mechanism is superior to other available methods for the fair

13  and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3); *Pierce v. County of Orange*,

14  526 F.3d 1190, 1197 n.5 (9th Cir. 2008).  Certification under Rule 23(b)(3) is appropriate and

15  encouraged "whenever the actual interests of the parties can be served best by settling their

16  differences in a single action."  *In re Ferrero Litig.*, 278 F.R.D. 552, 559 (S.D. Cal. 2011) (citing

17  *Hanlon*, 150 F.3d at 1022)).  A case such as this, where individual recoveries for Plaintiff and the

18  Class members will be small and – but for the class action – would not likely be pursued, is a

19  quintessential example of the practical utility of the class action mechanism under federal law.  *See*

20  *Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 527 (N.D. Cal. 2004) (stating that "[t]he policy at

21  the very core of the class action mechanism is to overcome the problem that small recoveries do not

22  provide the incentive for any individual to bring a solo action prosecuting his or her rights.").

23                              *i.      The questions of law and fact common to Plaintiff's and the Class's
                                        claims for violations of California's UCL, CLRA, and FAL
24                                      predominate over any individual issues.*

25      The requirement of predominance tests "whether proposed classes are sufficiently cohesive

26  to warrant adjudication by representation," rendering it a "far more demanding" standard than the

27  commonality requirement of Rule 23(a). *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168,

28  1172 (9th Cir. 2010).  Nevertheless, "[w]hen common questions present a significant aspect of the

---

RENEWED MOTION FOR                          18                    CASE NO. 12-cv-0229-TEH
CLASS CERTIFICATION

1  case and they can be resolved for all members of the class in a single adjudication, there is clear

2  justification for handling the dispute on a representative rather than an individual basis." *Mazza v.*

3  *Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012). When a plaintiff puts forth a theory

4  of liability in her motion for class certification, the court's analysis should focus on whether

5  common issues predominate under this theory and it need not evaluate the merits of the theory

6  itself. *See United Steel v. ConocoPhillips Co.*, 593 F.3d 802, 808-09 (9th Cir. 2010). Thus, the

7  predominance test begins "with the elements of the underlying cause of action." *Erica P. John*

8  *Fund, Inc.*, 131 S. Ct. at 2184.

9      Courts in the Ninth Circuit have frequently found common legal and factual issues to

10  predominate over individual issues in claims arising under the FAL, CLRA, and UCL. In cases

11  arising under these statutes, the predominant questions focus on whether misrepresentations were

12  made to the class as a result of the defendant's conduct and whether they would deceive a

13  reasonable consumer.[13] *See Johns v. Bayer Corp.*, 280 F.R.D. 551, 557 (S.D. Cal. 2012), *appeal*

14  *dismissed* (Apr. 12, 2012) (holding that predominant issues exist in UCL and CLRA claims,

15  including whether defendant made misrepresentations regarding its product and "whether [they]

16  were likely to deceive a reasonable consumer."); *Chavez*, 268 F.R.D. at 378-79 (finding that

17  predominating question in plaintiff's UCL, CLRA, and FAL claims focused on whether defendant

18  engaged in deceptive advertisements and misrepresentations); *In re Tobacco II Cases*, 46 Cal. 4th

19  298, 312 (2009) ("[T]o state a claim under either the UCL or the false advertising law, based on

20  false advertising or promotional practices, it is necessary only to show that members of the public

21  are likely to be deceived.").

22      Individual issues such as reliance or damages do not affect the finding of predominance

---

23  [13]     In determining the issue of predominance specifically, courts are able to narrow their

24  analysis due to the fact that each of these consumer protection statutes require a similar showing of
   deceptive conduct and reliance. *See Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1159

25  (N.D. Cal. 2011) (to state a claim under the fraudulent prong of the UCL, "it is necessary only to
   show that members of the public are likely to be deceived" by the business practice or advertising at

26  issue); *Arevalo v. Bank of Am. Corp.*, 850 F. Supp. 2d 1008, 1023 (N.D. Cal. 2011) (California's
   FAL "makes it unlawful for a business to disseminate any statement 'which is untrue or misleading,

27  and which is known, or which by the exercise of reasonable care should be known, to be untrue or
   misleading...."); Cal. Civ. Code § 1770 (CLRA prohibits "unfair methods of competition and unfair

28  or deceptive acts or practices undertaken by any person in a transaction intended to result or which
   results in the sale...of goods or services to any consumer.").

---

1    under these statutes.  This is because, "California consumer protection laws take an objective

2    approach of the *reasonable* consumer, not the particular consumer."  *Johns*, 280 F.R.D. at 557; *see*

3    *also Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1089, 1094 (9th Cir. 2010) ("[T]here

4    is no reason to look at the circumstances of each individual purchase in this case, because the

5    allegations of the complaint are narrowly focused on allegedly deceptive provisions of Midland's

6    own marketing brochures, and the fact-finder need only determine whether those brochures were

7    capable of misleading a reasonable consumer.").  In fact, reliance can be presumed under

8    California's consumer protection statutes where a material misrepresentation is alleged.  *See Stearns*

9    *v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011); *see also Tobacco II*, 46 Cal. 4th at 327.

10        Here, Yordy has presented a cognizable, unified theory of liability that Plimus knowingly

11   and systematically assisted and promoted MyPadMedia's UDWs in order to profit from unwitting

12   consumers. Specifically, Plimus worked with MyPadMedia to, *inter alia*, alter certain on content on

13   the UDWs, modify their promotional e-mails, modify their "buy now" pages, and attract customers,

14   all the while knowing of their fraudulent nature.  Thus, the proposed Class members' claims rise or

15   fall with the answer to whether Plimus can be held liable for this facilitation and promotion of the

16   fraudulent offers.  In addition, Plimus's liability will be established solely by examining its own

17   conduct, not the actions of any individual Class members.

18        Ultimately, Courts have routinely found issues of fact and law common to the class to

19   predominate over individual issues in scenarios similar to the one alleged here.[14]  For example, in

20   *Chavez*, the Court found that the plaintiff's allegations that "members of the public who were

21   exposed to defendants' allegedly deceptive advertisements and misrepresentations and who were

22   also consumers of defendants' products during a specific period of time" would satisfy the

23   predominance requirement. 268 F.R.D. at 379; *see also Cartwright v. Viking Indus., Inc.*, No. 07-

24   CV-2159 FCD EFB, 2009 WL 3872047, at *2 (E.D. Cal. Nov. 17, 2009) (certifying class alleging

25   UCL, CLRA and fraud based claims and finding allegations of fraudulent concealment "satisfied

---

26   [14]    The answers to these common questions—namely whether Plimus assisted and perpetuated
27   the misrepresentations alleged—will affirmatively determine its liability under the UCL (whether
     Plimus's business practices would likely deceive members of the public), the FAL (whether Plimus
     made a statement that is untrue or misleading), and also the CLRA (whether Plimus engaged in
28   deceptive acts or practices undertaken by any person in a transaction).

1   the predominance requirement because the common question of the materiality of the non-disclosed

2   defects may establish common causation.").  Yordy presents the same basic theories here.

3             ii.     *The common questions of law and fact with respect to Plaintiff's and the Class's claims of fraud in the inducement and by omission, and*

4                               *negligent misrepresentation, predominate over any individual issues.*

5        The same approach holds true where fraud is an element of the claims for which a plaintiff

6   seeks certification.[15]  In the context of common law fraud, the predominance requirement is met and

7   class certification is appropriate "if the plaintiffs allege that an entire class of people has been

8   defrauded by a common course of conduct." *Kennedy v. Jackson Nat. Life Ins. Co.*, No. C 07-0371

9   CW, 2010 WL 2524360, at *6 (N.D. Cal. June 23, 2010).  Thus, in analyzing Yordy's claims for

10  fraud in the inducement, fraud by omission, and negligent misrepresentation, the Court should

11  determine whether the alleged misrepresentations are borne of a common course of conduct,

12  whether they are sufficiently similar to warrant an inference of reliance among Class members, and

13  also whether common issues of justifiable reliance predominate among the Class as well.  *Id.*

14       To the first issue—i.e., whether the course of conduct and misrepresentations are sufficiently

15  similar—issues of predominance and subsequent class treatment have been permitted in fraud and

16  misrepresentation cases where, as in this case, "a standardized sales pitch is employed." *In re First*

17  *Alliance Mortgage Co.*, 471 F.3d 977, 992 (9th Cir. 2006).  Likewise, for a claim of fraud by

18  omission, "[a]ll that is necessary is that the facts withheld be material, in the sense that a reasonable

19  person might have considered them important in making his or her decision." *Plascencia v.*

20  *Lending 1st Mortgage*, 259 F.R.D. 437, 447 (N.D. Cal. 2009) (internal quotations omitted).

21       The common sales pitch here is simple.  All of the MyPadMedia UDWs were advertised and

22  promoted as offering unlimited access to various popular eBooks for a one-time membership fee.

23  Further, Plimus provided the same services and assistance to each of the UDWs through

24  MyPadMedia.  The result is that in addition to employing the same "sales pitch", the UDWs took on

25

---

26  [15]    The elements of a claim for fraud are "(a) a misrepresentation (false representation, concealment, or nondisclosure); (b) scienter or knowledge of its falsity; (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Missud v. Oakland Coliseum Joint Venture*, No.

27  12-02967 JCS, 2013 WL 812428, at *21 (N.D. Cal. Mar. 5, 2013).  However, as discussed in this section, the focus for purposes of predominance is on a finding of a common course of conduct by

28  the defendant in making these misrepresentations.

1  the same basic form and format, including, *inter alia*, the prevalence of images of popular book

2  titles not actually offered by the sites.  (*See, e.g.,* Ex. 16.)  Thus, there should be no question that

3  Plimus engaged in a common course of conduct with respect to the Class.

4        Next, to establish justifiable reliance on an alleged fraudulent scheme, "[p]laintiffs need

5  only show that the alleged misrepresentations were a 'substantial factor' in inducing reliance."

6  *Joint Equity Comm. of Investors of Real Estate Partners, Inc. v. Coldwell Banker Real Estate Corp.*,

7  281 F.R.D. 422, 433 (C.D. Cal. 2012) (citing *First Alliance*, 471 F.3d at 992); *see also Vasquez v.*

8  *Superior Court of San Joaquin County*, 4 Cal. 3d 800, 814 n. 9 (1971) ("a misrepresentation may be

9  the basis of fraud if it was a substantial factor in inducing plaintiff to act….")).  And, as detailed

10  above, issues of reliance need not be determined on an individual basis, as "the Ninth Circuit held

11  that a finding of class-wide reliance, for certification purposes, does not require alleged

12  misrepresentations to be uniform."  *Coldwell Banker*, 281 F.R.D. at 429.

13        The Court need not guess as to whether the Class's reliance on Plimus's deceptive conduct

14  was a "substantial factor" in this case.  A sample of the consumer complaints quickly reveals the

15  extent to which consumers relied on these misrepresentations of unlimited downloads and access to

16  popular digital media.  (*See, e.g.,* Ex. 20.)  It is eminently clear that consumers were lured in by the

17  false promises of unlimited access to eBooks and justifiably relied on them— ultimately to their

18  detriment.  Given the uniformity of the alleged misrepresentations and the proposed Class

19  members' reliance on them, the Court should find that these issues relating to Yordy's claims of

20  fraud and negligent misrepresentation predominate over any individual ones.

21                    iii.    *The common questions of law and fact with respect to Plaintiff's and
                              the Class's breach of contract claims predominate over individual*
22                            *issues.*

23        Finally, common issues predominate with respect to Yordy's and the Class's breach of

24  contract claims as well.[16]  Certification is appropriate for claims of breach of contract where a court

25

---

26  [16]     To assert a cause of action for breach of contract, a plaintiff must plead: (1) the existence of
a contract; (2) the plaintiff's performance or excuse for non-performance; (3) the defendant's
27  breach; and (4) damages to the plaintiff as a result of the breach.  *Vedachalam v. Tata Consultancy
Servs., Ltd.*, No. C 06-0963 CW, 2012 WL 1110004, at *11 (N.D. Cal. Apr. 2, 2012), *leave to
28  appeal denied* (June 13, 2012).  As explained *infra*, the existence of all four elements will be
determined based on common factual issues that predominate over the class.

can readily determine that factual inquires amongst the class are objectively measurable and require no individualized subjective determinations to be made.  *Vathana v. EverBank*, No. 09-02338 RS, 2010 WL 934219, at *4 (N.D. Cal. Mar. 15, 2010).  Though "putative class members differ among themselves in certain factual aspects," where a plaintiff's legal theory of recovery under a breach of contract claim "is one in which common issues of law and/or fact predominate over individual questions…a class action is superior to individual adjudication of the putative class members' individual claims."  *Id.*  Further, individualized issues of damages do not preclude certification of a breach of contract claim, especially where a plaintiff  "will be able to prove the *fact* of damages on a classwide basis" and "even if there are minor differences…'damage calculations alone cannot defeat certification.'"  *Nat'l Seating & Mobility, Inc. v. Parry*, No. 10-02782 JSW, 2012 WL 2911923, at *9 (N.D. Cal. July 16, 2012) (quoting *Yokoyama*, 594 F.3d at 1094).

Here, Plaintiff and the proposed Class agreed to purchase access to the "unlimited" digital media promoted by Plimus as offered by MyPadMedia's UDWs, and did so through a payment processing page designed, operated, and owned by Plimus.  In doing so, Plaintiff and the Class entered into a contractual agreement with Plimus, the terms and benefits of which inured to it.  (*See* Ex. 4 at 52:22-53:20; Ex. 5 at 10-12.)  Plimus then breached this contract when it failed to provide the bargained for unlimited access to popular eBook titles.  As a result, Yordy and the Class have suffered nearly identical damages in the form of the "membership" fees they paid to access the digital media.  Thus, common questions of fact and law predominate as to the breach of contract claim, and individual inquiries such as the precise amount of damages or the precise language contained on each of the UDWs do not thwart the ability for this claim to be adjudicated on a classwide basis. (*See* Ex. 5 at 10-12.)

> *iv.*     *This class action is a superior method for the adjudication of this controversy.*

Rule 23(b)(3)'s final requisite to class certification is also satisfied inasmuch as the maintenance of this case as a class action is superior to any other method available to fairly and efficiently adjudicate the Class members' claims.  The superiority requirement is grounded in concerns of judicial economy and exists to assure that a class action is the "most efficient and effective means of resolving the controversy."  *Wolin*, 617 F.3d at 1175-76.  "Where recovery on an

1   individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs

2   in favor of class certification." *Id.* at 1175; *see also Breeden v. Benchmark Lending Grp., Inc.*, 229

3   F.R.D. 623, 630 (N.D. Cal. 2005) (noting that "where damages sought by each class member are not

4   large, class members have a reduced interest in individually controlling a separate action.").

5          Yordy's and the Class members' claims against Plimus related to its facilitation and

6   promotion of the MyPadMedia sites are particularly suited for class treatment because they involve

7   identical violations of California statutes and common law theories of liability, all of which arise

8   from Plimus's uniform conduct—i.e., its promotion and marketing of the UDWs.  Absent a class

9   action, most members of the Class would find the cost of litigating their claims—which seek to

10  recover only the one-time membership fee of approximately $50—to be prohibitive.[17]  Indeed,

11  Plaintiff has already incurred significant costs pursuing this litigation, including responding to

12  Plimus's Motion to Dismiss, taking and responding to extensive written and oral discovery—

13  including reviewing several thousands of pages of documents produced by Plimus, traveling for

14  numerous depositions (including one in Israel), and briefing on related discovery disputes.

15         By contrast, if this case did not proceed on a classwide basis, it is unlikely that any

16  significant number of Class members would be able to obtain redress or that Plimus would willingly

17  cease the promotion of these types of deceptive and fraudulent products.[18]  *See* H. Newberg, Class

18  Actions § 4.36 (4th ed.2002) (class actions "were designed not only to compensate victimized

19  members of groups who are similarly situated…but also deter violations of the law, especially when

20  small individual claims are involved").  Given the relatively nominal amount of individual damages

21  at issue, and the likelihood that individual consumers would be unable to pursue litigation to

22  recover them, this case satisfies the element of superiority.

23         In sum, the requirements of Rule 23(b)(3) are met, as common questions predominate and a

24

25  [17]    Multiple individual actions to recover such relatively nominal amounts would also be
    judicially inefficient, to say the least. *See Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 448
26  (N.D. Cal. 2008) (finding that where individual damages were relatively small it was "far more
    efficient and far less costly to litigate their claims in a class action.").

27  [18]    Although Plimus finally opted to suspend the UDWs in light of this lawsuit—even though it
    had been receiving complaints from consumers for well over a year—absent a court order, there is
28  nothing to prevent Plimus from reinstating these websites and resuming the fraudulent marketing of
    their products.  (*See generally* Ex. 36.)

1  class action is the superior method of adjudicating this controversy, rendering this proposed class

2  action appropriate for certification pursuant to Rule 23(b)(3).

3       **E.     The Court Should Appoint Yordy's Counsel as Class Counsel.**

4       Finally, Rule 23 requires "a court that certifies a class [to] appoint class counsel…[who]

5  must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).  In

6  doing so, the Court must consider counsel's (1) work in identifying or investigating potential

7  claims; (2) experience in handling class actions or other complex litigation and the types of claims

8  asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to

9  representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

10      Proposed Class Counsel easily meet each of Rule 23(g)'s requirements. They have diligently

11 investigated and prosecuted Yordy's claims and those on behalf of the proposed Class, and have

12 devoted, and will continue to devote, substantial amounts of time and other resources to this

13 litigation. (Richman Decl. ¶ 55.)  Additionally, they have significant experience prosecuting class

14 actions and complex cases of similar size and scope, and have routinely been appointed class

15 counsel in analogous consumer class actions involving deceptive and misleading online marketing

16 and sales. (*See Id*. ¶¶ 53-55.)  Given their breadth of experience generally, and with the legal and

17 factual issues involved in this case specifically, proposed Class Counsel are well equipped to lead

18 this case on behalf of the Class, and their efforts to date make that clear. (*Id*.)  Accordingly, the

19 Court should appoint Yordy's counsel, Rafey S. Balabanian, Benjamin H. Richman and Christopher

20 L. Dore of Edelson PC, to serve as Counsel for the proposed Class pursuant to Rule 23(g).[19]

21 **V.    CONCLUSION**

22      For the reasons stated above, the requirements of Rule 23 are satisfied and therefore Plaintiff

23 Kimberly Yordy, on behalf of herself and the proposed Class, respectfully requests the Court enter

24 an Order (1) certifying the proposed Class pursuant to Rules 23(a), (b)(2) and (b)(3), (2) appointing

25 Rafey S. Balabanian, Benjamin H. Richman and Christopher L. Dore of Edelson PC as Class

26 Counsel, and (3) awarding such other and further relief as the Court deems reasonable and just.

27

28  [19]    Upon certification of this Class, Plaintiff will present a notice plan to the Court and provide an explanation about how notice that satisfies Rule 23 and Due Process can be accomplished.

RENEWED MOTION FOR          25                    CASE NO. 12-cv-0229-TEH
CLASS CERTIFICATION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,

**KIMBERLY YORDY**, individually and on behalf of a class of similarly situated individuals,

Dated:  February 5, 2014

By: /s/ Benjamin H. Richman
        One of Plaintiff's Attorneys

Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Benjamin H. Richman (Admitted *Pro Hac Vice*)
brichman@edelson.com
Christopher L. Dore (Admitted *Pro Hac Vice*)
cdore@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Mark Eisen (SBN – 289009)
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 90013
Tel: 213.533.4100
Fax: 213.947.4251